STATE OF MISSOURI ex rel. SOLOMON E. WAGGONER et al., Respondent, v. JAS. M. SEIBERT, Excise Commissioner of the city of St. Louis, Appellant.

St. Louis Court of Appeals, December 9, 1902.

1. **Dramshop License:** APPLICATION: AFFIDAVIT: PETITION: EXCISE COMMISSIONER. No affidavit is required to accompany a petition of an applicant for a dramshop license, and an order annulling a license on the ground that an affidavit accompanying the petition was not made by any officer authorized to administer oaths, was erroneous.

2. ———: ———: ———. All jurisdictional facts to authorize the granting of a dramshop license by the county court or excise commissioner must affirmatively appear on the face of the proceedings.

3. ———: ———: ———: JURISDICTION: STATUTORY CONSTRUCTION. Under the provisions of section 2997, Revised Stat-

State ex rel. v. Seibert.

utes 1899, as amended by Act of March 13, 1901, excise commission-
ers have no jurisdiction to grant a dramshop license until the peti-
tion has been on file ten days.

Appeal from St. Louis City Circuit Court.—*Hon. Warwick Hough*, Judge.

AFFIRMED.

### STATEMENT OF THE CASE.

The relators filed in the circuit court of the city of St. Louis a petition for writ of certiorari directed to James M. Seibert, excise commissioner of said city, requiring him to send up the petition of Morgan and Bergman for a license to keep a dramshop at No. 3005 city block No. 1012, on Olive street, in the city of St. Louis, together with all the proceedings had in the office of the excise commissioner pertaining to the granting of said license.

Among other things the petition alleges that the application of Morgan and Bergman for the license was filed on September 24, 1901, and the license was granted on the following day; that a majority of the taxpaying citizens and guardians of minors in the said block did not sign the petition for the license; that said license was issued over the protest of the taxpaying citizens in said block and contrary to law.

To the writ the excise commissioner made the following return, to-wit:

"Respondent admits that he is the duly appointed, qualified and acting excise commissioner of the city of St. Louis, and that as such officer he is vested by law with exclusive authority to grant dramshop licenses in the city of St. Louis, and that his powers and duties are prescribed by law which are substantially as detailed by relators, and this respondent denies each and every other allegation in relator's petition contained, except as hereinafter admitted. . . .

"Further, this respondent says that he investigated or caused to be investigated, the records of the assessor

in the city of St. Louis for the purpose of ascertaining the total number of assessed taxpaying citizens and guardians of minors owning property in said block 1021, those persons paying taxes upon real estate being ascertained from the plat of said block on file in said assessor's office, and the list of those persons paying taxes upon personal property in said block being ascertained by having a census of said block taken, and by investigation also of the records in the said assessor's office.

"This defendant further says that upon a thorough and careful investigation, he found that the total number of assessed taxpaying citizens and guardians of minors owning property in said block was sixty-three, and that of this number thirty-five of said taxpaying citizens and guardians of minors had signed the said application of said Morgan and Bergman praying that he issue to said Morgan and Bergman a license to keep a dramshop in said city block 1021, at No. 3005 Olive street, and it thereupon appearing to this respondent that said Morgan and Bergman had fully complied with all the provisions of the law a license to establish a dramshop at the premises aforesaid was accordingly issued to them.

"This respondent further says that he received a certain communication relative to the issuance of said license to said Morgan and Bergman, dated October 10, 1901, and signed by Leverett Bell, Esq., as counsel, complaining that the petition of said Morgan and Bergman was insufficient, and this respondent says that after a thorough investigation of each and every allegation therein he was fully satisfied that the said license had been properly granted, and so notified the said counsel for complainants. The said communication and this respondent's reply are set forth in relator's petition, and this respondent further says that no other complaint has been filed herein. . . .

"Further this respondent says that in ascertaining the disposition of the assessed taxpaying citizens and guardians of minors owning property in the block as to the granting of a dramshop license, the signatures at-

tached to the petition are alone considered; the names of the taxpayers not on the petition being held to be against the granting of a license. . . ..

"Further, this respondent says that, in the exercise of his duties as excise commissioner of the city of St. Louis, he had heard the evidence and fully considered all the facts in connection with each of the foregoing complaints and found the facts as related, and this respondent respectfully submits that, upon the face of the petition and the proceedings before him, it appears that he has complied with all the provisions of the law relating to the issuance of the license herein complained of, and he, therefore, prays that the writ herein granted be quashed."

On the filing of the return the relators filed the following motion to quash the license:

"Now comes the relators and move the court to cancel and quash the dramshop license granted to E. G. Morgan and H. W. Bergman on September 25, 1901, to keep a dramshop at 3005 Olive street, in the city of St. Louis, in block 1021, because it does not appear on the record of said proceedings that the parties named in said license possess the qualifications required by law of one licensed to keep a dramshop in the city of St. Louis, Missouri."

It was agreed that the relators had made application to the Attorney-General and to the Circuit Attorney of the city of St. Louis to appear and prosecute the proceedings and that both had refused to do so.

The petition for the license, omitting the names of the petitioners, is as follows:

"The undersigned, being a majority of the assessed taxpaying citizens and guardians of minors owning property in block No. 1021, of the city of St. Louis, petition you to grant E. G. Morgan and H. W. Bergman, a license to keep a dramshop at 3005 Olive street, in said block, for twelve months." . . .

"State of Missouri, City of St. Louis, ss.

"E. D. Morgan, being duly sworn, on his oath says that the foregoing petitioners comprise a majority of

the assessed taxpaying citizens and guardians of minors owning property in block No. 1021 in the city of St. Louis, and that the signatures thereto attached are the personal and genuine signatures of the parties therein mentioned. And affiant further states that he is a law-abiding, assessed, taxpaying citizen of said city, above twenty-one years of age, and that he has not violated the dramshop laws of the State of Missouri, to the best of his knowledge and belief.

(Signed)                      "MORGAN & BERGMAN, '

"Applicants.

"Sworn to and subscribed before me this 24th day of September, 1901.

"R. P. THOMPSON,

"Deputy Excise Commissioner."

The relators offered to prove that only twenty-four of the taxpaying citizens in the block had signed the petition for the license and that eleven names to the petition were forgeries, that is, written by other persons than those purporting to have written them, and others of them had signed a remonstrance against the issuance of the license; and that deducting the eleven illegal signatures from the whole number there was less than a majority of the taxpaying citizens and guardians of minors in said block signed the petition, which evidence on the objection of the excise commissioner was excluded by the court.

The court found for relators, sustaining the motion to quash the license, on the ground that the law does not authorize the appointment of a deputy excise commissioner and that the person signing himself as such had no authority under the law to administer oaths, and entered judgment annulling the license.

A timely motion for new trial was filed which was by the court overruled and respondent below perfected his appeal.

*Marion C. Early* for appellant.

*Leverett Bell* for respondent.

BLAND, P. J.—1. Neither the dramshop act nor the act creating the office of excise commissioner requires that a petition for a dramshop license shall be verified by the affidavit of the applicant. The only affidavit the applicant is required to file is the one prescribed by section 2994 of the dramshop act. This affidavit has no reference to the petition for the license. Its purpose is to furnish the basis for the assessment of an advalorem tax on the merchandise of the dramshop-keeper. The affidavit made by E. D. Morgan to the petition, and sworn to before R. D. Thompson, as deputy excise commissioner, was *extra judicie*. Not being required by law it did not add to nor detract from the petition or make it any the better or any the worse. It was therefore immaterial whether or not the excise commissioner had authority to appoint a deputy or whether the affidavit was made before an officer authorized by law to administer oaths, and we are of the opinion that the learned circuit judge committed error in annulling the license for the reason that the affidavit to the petition was not made by an officer authorized to administer oaths.

2. It is alleged in the petition for the writ that the petition for the license was filed on the twenty-fourth day of September, 1901, and that the license was issued the following day in violation of section 2997 of the dramshop act (R. S. 1899) as amended by an act of the General Assembly approved March 13, 1901 (Session Acts of 1901, p. 142). By the terms of section 3020, (R. S. 1899) pertaining to a petition for a dramshop license filed with the excise commissioner, section 2997 of the dramshop act must be read into that section (3020) and of course the section as amended by the Act of March 13, 1901.

The amended act requires that the petition for the license "shall be filed in the office of the clerk of the county court not less than ten days before the first day of the court to which it is to be presented, and remain on file for public inspection, and by the said clerk laid before the court at the first term thereafter; and all

dramshop licenses issued contrary to the provisions of this section shall be void.'' Writing this amendment into section 3020, supra, it would not be competent for the excise commissioner to issue a license until the petition therefor had been filed in his office and open for public inspection at least ten days before the granting of the license.

The obvious purpose of the amendment requiring the petition to be on file for at least ten days for public inspection before a license shall be granted is to afford the public, whose business, good neighborhood, or peace might be affected by the location of a dramshop in their midst, an opportunity to make protest and to defend their property and personal interests against the proposed dramshop; in other words, to make the public a party to the proceedings and to afford it an opportunity to be heard in opposition to the granting of the license. If this be so then the provision is a jurisdictional one and a license issued on a petition, which had not been on file and open for public inspection for at least ten days, would, in the language of the amendment, ''be void.''

It has been repeatedly held by this court that all the jurisdictional facts, to authorize the granting of a dramshop license by the county court or excise commissioner, must affirmatively appear somewhere on the face of the proceedings. State v. Police Commissioners, 14 Mo. App. 297; State ex rel. Campbell v. Heege, 37 Mo. App. (St. L.) 338; State ex rel. Reider v. Moniteau Co. Ct., 45 Mo. App. (K. C.) 387; State ex rel. v. Mayor and Board of Alderman of Neosho, 57 Mo. App. (St. L.) 192; State ex rel. v. Higgins, 71 Mo. App. 180. This ruling is supported both on account of the nature of the subject-matter and on the rule that the jurisdiction of inferior tribunals, not proceeding according to the course of the common law, must appear affirmatively on the face of the proceedings. Kidd et al. v. Guibar, 63 Mo. 342; Howard v. Clark et al., 43 Mo. 344; Sanders v. Rains et al., 10 Mo. 770.

The return of the excise commissioner to the writ

of certiorari shows that the petition for the dramshop license was lodged with him on September 24, and that he immediately notified some of the persons who had signed the remonstrance that he would take the matter up the next day; that he did take it up on the next day, and after investigating the petition ordered the license to be issued upon the payment, by the applicants, of the license tax and the giving of the requisite bond.

This action was not only irregular and premature, but was in excess of the jurisdiction of the excise commissioner. He had no jurisdiction to pass upon the petition and application until the petition had been on file in his office for at least ten days and open to the inspection of the public. For want of jurisdiction to issue the license at the time it was issued, the license is void.

The judgment is affirmed.     *Barclay* and *Goode., JJ.,* concur.