THE STATE ex rel. JOHN JACOB DICK et al. v. JOHN WIETHAUPT et al., Judges of County Court.

Division One, December 21, 1915.

1. **DRAMSHOP LICENSE: Granted During Term at Which Petition is Filed.** Section 7201, Revised Statutes 1909, declaring that the petition for a dramshop license "shall be filed in the office of the Clerk of the County Court not less than ten days before the first day of the court to which it is to be presented and remain on file for public inspection and by said clerk laid before the court at the first term thereafter, and all dramshop licenses issued contrary to the provisions of this section shall be void," does not render invalid a dramshop license granted at the same term at which the petition was filed. The language requiring the clerk to lay the petition before the court at

the first term thereafter simply imposed on him a ministerial duty for the benefit of the applicant, and was never intended to invalidate a license granted by the court in due form at the same term; and especially should such license not be held void for the reason it was granted at the same term the petition was filed, where the applicant with his attorney and the remonstrators were in court at the appointed time, and the application was heard on its merits. [Following State v. Evans, 83 Mo. 319; and disapproving State ex rel. v. Wiethaupt, 165 Mo. App. 634.]

*Held*, by WOODSON, J., dissenting, that the statute is not directory simply, but mandatory, nor was it intended for the benefit of the applicant, but was intended to give to the inhabitants of the county an opportunity to be heard and to remonstrate; and the clause declaring that "all dramshop licenses issued contrary to the provisions of this section shall be void" did not have reference only to the filing of the petition, but clearly makes void a license granted at the same term the petition is filed.

2. ———: ———: Inspection of Petition. But a dramshop license cannot be granted or the petition therefor heard until ten days after the petition has been filed with the County Clerk. That part of the statute (Sec. 7201, R. S. 1909) is mandatory, and was enacted in order that citizens of the county might have ample opportunity for inspection of the petition, and to file a remonstrance, etc.

## Transferred from St. Louis Court of Appeals.

REVERSED AND REMANDED (*with directions*).

*Eliot, Chaplin, Blayney & Bedal* for relators.

The judgment or order of the county court granting a dramshop license at the same term of court at which the petitions of the assessed tax-paying citizens and guardians of minors of the block and municipal township are filed is void. Sec. 7201, R. S. 1909; State ex rel. v. Heege, 37 Mo. App. 338; State ex rel. v. Mitchell, 127 Mo. App. 455; State ex rel. v. Higgins, 84 Mo. App. 531.

*E. W. Mills* and *George B. Logan* for respondents.

RAILEY, C.—On application of relators, a writ of *certiorari* was issued by the St. Louis Court of

Appeals in March, 1912, commanding the County Court of St. Louis County, Missouri, to transmit to said Court of Appeals, the record of the proceedings had in the said County Court in the matter of the application of Charles S. Kinney for a dramshop license. In obedience to said writ, the respondents herein made full return to said Court of Appeals of all such proceedings, including the original papers.

It appears from relator's written application for said *writ of certiorari,* that the petition of said Kinney for a dramshop license was filed before the Clerk of the County Court of said county on the 17th day of February, 1912. It further appears therefrom that the regular term of said County Court opened "February 5, 1912, and was adjourned to February 9, 1912; on which day the court adjourned to February 16, 1912; on which day the court adjourned to February 19, 1912; on which day the court adjourned to February 23, 1912; on which date the court adjourned to February 26, 1912; on which date the court adjourned to February 29, 1912; on which date the court adjourned to March 1, 1912; *on which date the court adjourned to March 4,* 1912; on which date the court adjourned to March 8, 1912."

Said application further alleges, that the Clerk of said County Court laid before the latter on March 4, 1912, the application of Kinney, his petitions, bonds, etc., and that said court on said date granted said Kinney a license to keep a dramshop as prayed for, etc. The above application for the writ of *certiorari* was duly verified.

Respondents in their return, which is not contradicted, allege that said petition for a dramshop license was duly filed with the Clerk of said County Court on February 17, 1912; that on February 20, 1912, relators and others filed a remonstrance against the granting of said dramshop license; that said pe-

titioners and remonstrators appeared in person and
by attorneys before said County Court, and the issues
raised by the petition and remonstrance were then
heard by said court; that evidence was presented by
both petitioners and remonstrators, and that said
evidence and oral arguments by attorneys were duly
heard by said court. The return further shows that
said Kinney had met the requirements of the law,
and was entitled to his dramshop license, so granted,
unless the proceedings of said court were void. Upon
a final hearing of said cause in said Court of Appeals,
Judge NORTONI wrote an opinion, in which Judge
CAULFIELD concurred, quashing the proceedings of said
county court in respect to the matter aforesaid. Judge
REYNOLDS, of said court, dissented in an opinion filed.
The majority opinion concludes as follows:

"However, we deem the judgment here given to
be in conflict with the views expressed by the Kansas
City Court of Appeals in State ex rel. Reider v. Mon-
iteau County Court, 45 Mo. App. 387, and, therefore,
certify the case to the Supreme Court for final deter-
mination."

Under and pursuant to the order of said Court
of Appeals aforesaid, all the records and proceedings
in said cause which were before the Court of Appeals,
together with copies of the opinions aforesaid, were
duly transmitted to this court as required by law. The
opinions of said judges are printed in full in 165 Mo.
App. 634 et seq.

On the record thus presented, relators insist that
said county court was without jurisdiction, while re-
spondents contend that as all the jurisdictional facts
necessary to warrant the court in issuing the license
were affirmatively found and entered of record by the
court, that its action was regular and that the order
granting said license, made by it on the 4th of March
aforesaid, was valid.

I. The St. Louis Court of Appeals in this case quashed the judgment of the County Court of St. Louis

**Dramshop License: Granted at Term Petition Is Filed.**

county, Missouri, rendered on March 4, 1912, granting to Charles S. Kinney a dramshop license, on the alleged ground that the petition for a license was filed before the Clerk of said County Court on the 17th of February, 1912, during the regular February Term, 1912, of said County Court, and that the judgment of said court, granting said license, was rendered on the 4th of March, 1912, and during the regular February Term aforesaid. Judge REYNOLDS dissented, in an opinion filed. The case was certified here, because the conclusion reached by the majority of said court was said to be in conflict with the opinion of the Kansas City Court of Appeals in State ex rel. Reider v. Moniteau County Court, reported in 45 Mo. App. at pages 387 and following, wherein, Judge ELLISON, speaking for said court, held that a petition for a dramshop license could be filed and a license granted during the same term of the County Court.

A number of authorities are referred to by counsel in their briefs, although but few of same throw any light on the questions before us. In passing upon the case, it becomes necessary for us to construe section 7201, Revised Statutes 1909, as the conclusion reached will be decisive of the case. That part of section 7201, supra, necessary for us to consider in passing upon the question involved, reads as follows:

"Which said petition [for dramshop license] shall be filed in the office of the clerk of the county court not less than ten days before the first day of the court to which it is to be presented and remain on file for public inspection and by the said clerk laid before the court at the first term thereafter, and all dramshop licenses issued contrary to the provisions of this section shall be void."

In arriving at a correct interpretation of above section, we deem it important to refer to the ante-cedent laws upon this subject as they existed in this State from 1865 up to the enactment of the present law, which occurred in 1901. [Laws 1901, p. 142.] Section 8 of chapter 98, General Statutes 1865, p. 420, relating to this subject, reads as follows:

"Which said petition shall be filed in the office of the clerk of the county court, and by said clerk laid before the court at the first term thereafter . . . and all dramshop licenses issued contrary to the pro-visions of this section shall be void."

The language just quoted, will be found in section 5442, Revised Statutes 1879; in section 4 of the Laws of 1883, at pages 87-8, and in section 4576, Revised Statutes 1889.

In 1891 (Laws 1891, pages 129 and 130), the lan-guage in regard to the above subject was slightly changed. Section 8 of said act reads as follows:

"Which said petition shall be presented to the county court or *other authority;* and all dramshop li-censes issued contrary to the provisions of this section shall be void."

The same language just quoted was used in section 2997, Revised Statutes 1899.

In 1901 (Laws 1901, p. 142), said section 2997, Revised Statutes 1899, was changed, so as to read as we find it in section 7201, Revised Statutes 1909, at the present time.

It is generally known that for many years after the conclusion of the Civil War in this country, there were but few counties in our State without licensed dramshops. Later, public sentiment began to change in regard to the sale of liquor in many counties of the State, until ultimately but few are left in which the sale of intoxicating liquor is legally permitted within their borders. *From 1865 to 1901, an applicant for license was simply required to file his petition with*

*the clerk, and upon proper proof made, procure a license from the county court, not only at the same term, but on the same day the petition was filed.* In the well considered and often cited case of State v. Evans, 83 Mo. 319, the defendant, as shown by the record here, filed his petition for a dramshop license in Cass county, Missouri, on *December* 21, 1883. The county court *on the same day,* over the protest of a remonstrator, *granted defendant a dramshop license,* and caused its record to recite the necessary jurisdictional facts which, it was held, legally warranted the granting of said license. Section 4 of the Laws of 1883, pages 87-8, was in full force and effect when said license was granted. It reads in respect to the matter under consideration, as follows:

"Which said petition shall be filed in the office of the clerk of the county court and by said clerk laid before the court at the first term thereafter . . . and all dramshop licenses issued contrary to the provisions of this section shall be void."

Defendant Evans was indicted for selling intoxicating liquor without a license, on the theory that his license above granted was void. The circuit court at the trial permitted the State to *ignore* said license and introduce evidence tending to show that defendant was not entitled to it. He was convicted, appealed to this court, and the judgment below was reversed and defendant discharged. The ruling in the Evans case supra necessarily determined that he had the legal right to *file his petition and procure a license on the same day of the term.* The conclusion necessarily reached in disposing of said case treated that portion of section 4 supra directing the clerk to lay the application before the court at the first term thereafter, as merely directory and not mandatory, as held by Judge THOMPSON in his dicta to the opinion in State ex rel v. Heege, 37 Mo. App. 338. The construction placed upon section 4 of the Act of 1883 supra, in the

Evans case, by Judge MARTIN, Commissioner of this court, meets with our approval.

It is manifest that the direction to the clerk to lay the petition before the court at the first term thereafter, contemplated that a petition *might* be presented to the clerk and filed in vacation more than ten days before the first day of the term, and yet the clerk, were it not for this section, might arbitrarily pigeonhole the application until the term had passed. Especially might the foregoing happen, where the applicant *anticipates no opposition,* and leaves his papers properly and timely executed with the clerk, relying on him to call the attention of the court thereto. The language used in reference to the clerk in section 7201 supra simply requires of him a ministerial act for the benefit of the applicant, and his failure to comply with the requirement of the statute was never intended to invalidate a license granted by the court in due form, and especially is this true where the applicant is in court with his attorney, and tries the case upon its merits with the remonstrators before the court at the appointed time, as in this case.

II. Section 7201, Revised Statutes 1909, among other things provides, that:

"Said petition shall be filed in the office of the clerk of the county court not less than ten days before the first day of the court to which it is to be presented and remain on file for public inspection."

This language first appeared in Laws 1901, page 142. As heretofore suggested, public sentiment had been undergoing a change in respect to the sale of intoxicating liquors before the last named act was passed. Those *opposed* to the sale of liquor were not satisfied with the then existing condition of affairs, and were manifestly demanding a change in the law. As matters stood up to the passage of the Act of 1901, a dramshop

Inspection of Petition.

keeper *could have his papers prepared; placed in the hands of another, and presented to the court at an opportune time, when those desiring to remonstrate were ignorant of what was transpiring, and in this manner obtain a license, which might otherwise have been refused.* The Legislature, therefore, in 1901, passed the above act for the evident purpose of giving those opposed to the issuance of a license an opportunity to be heard before it was granted. Instead of permitting the petition to be filed and taken up at once, without notice, as the applicant had the right to do under the law when the Evans license was granted in 1883, the applicant is now required to file his petition in the office of the Clerk of the County Court not less than ten days before the first day of the court to which it is to be presented, and it is required to *remain on file for public inspection.*

The manifest purpose of the above language, was to give the community interested an opportunity to show cause why the license should be refused. It was required to remain on file in order that those interested might know *what* they had to meet, and prepare to defend against the issuance of the license. It would be wholly immaterial to the public or remonstrators whether the case was tried during a regular, adjourned or special term, so the petition gave ten days notice and remained on file for the inspection of the public.

The language of the act requiring the petition to be filed as aforesaid and to remain on file in the office of the county clerk for not less than ten days before the day of trial, or the granting of the license, is *mandatory,* and must be complied with before a valid license can be obtained; but on the other hand, we hold that a petition filed in the office of the clerk of the county court on the 17th of February, 1912, and which remains on file until the 4th of March of the same year, when a trial is then had and the license granted, is a substantial compliance with the requirements of said

section 7201, in respect to above matter, even if the petition is filed in the office of the County Clerk and the license *granted during the same term of court.*

The conclusion therefore reached by the Kansas City Court of Appeals, speaking through Judge ELLISON, in the case of State ex rel. Reider v. County Court of Moniteau County, 45 Mo. App. 387, properly declared the law in respect to foregoing matters.

III. Judge NORTONI in the majority opinion certified to this court and reported in 165 Mo. App. 634, at page 643, after reviewing certain cases, said:

"In view of these authorities and the statutes above quoted, providing for an adjourned term of the County Court, it seems clear that the Legislature intended to confer jurisdiction on the County Court to grant a dramshop license at the first adjurned term thereafter—that is, after filing the petition—provided the petition remained on file with the clerk for inspection ten days before the first day of such court, that is, the adjourned term.

"But though such be true, the record before us does not reveal the petition to have been filed ten days before and that it was acted upon at an adjourned term. On the contrary, it appears to have been both filed and acted upon during the regular February term, and not ten days before a term of the court of any character.

"The return before us dicloses the petition was filed on February 17th and that it was presented to the court and acted upon during the February term, on March 4th thereafter. Obviously, more than ten days had elapsed after the petition was filed, but it does not appear the court was in session at an adjourned term."

We have pointed out in the statement of the case that the court was not in session on February 17, 1912, when the petition for a license was filed in the clerk's

office. The verified petition, filed by relators in the St. Louis Court of Appeals on which the *writ of certiorari* was issued, on page three of same, shows that the County Court adjourned on February 16, 1912, to February 19, 1912; "on which date the court adjourned to February 23, 1912; on which date the court adjourned to February 26, 1912; on which date the court adjourned to February 29, 1912; on which date the court adjourned to March 1, 1912; on which date the court adjourned to March 4, 1912."

We do not find anything in the return which is contradictory of the foregoing matters. We presume the Court of Appeals must have overlooked the uncontradicted and verified averments of relator's petition, which shows that the application for a license was filed in the office of the Clerk of the County Court on February 17, 1912, *while the court was not in session, and that the court held on March 4, 1912, was an adjourned term.* It is fair to assume that, if the attention of the Court of Appeals had been directed to the above statements of relators in their petition, the judgment quashing the proceedings of said County Court might not have been entered in the cause. The conclusion heretofore reached is not in harmony with the views and judgment of the St. Louis Court of Appeals as expressed in the majority opinion of Judge NORTONI and concurred in by Judge CAULFIELD.

We accordingly reverse and remand the cause, with directions to the St. Louis Court of Appeals to set aside its judgment quashing the judgment of the County Court of St. Louis County, Missouri, rendered on March 4, 1912, granting Charles S. Kinney a dramshop license, and to otherwise dispose of the case in conformity with the views here expressed.

*Brown, C.,* not sitting.

PER CURIAM.—The foregoing opinion of RAILEY, C., is hereby adopted as the opinion of the court. *Graves, P. J.*, and *Bond, J.*, concur.; *Blair, J.*, concurs in paragraphs one and two and in result; *Woodson, J.*, dissents in opinion filed.

WOODSON, J. (dissenting).—I dissent from the opinion of our learned Commissioner in this case for the reason that in my judgment that clause of section 7201, Revised Statutes 1909, providing that the petition shall be filed in the office of the clerk of the county court and by him laid before the court at the first term thereafter, is not directory, nor was it intended for the benefit of the petitioner for a license to run a dram-shop; but upon the contrary, in my opinion, the clear design of the Legislature was to give the residents of the community in which it is proposed to operate a saloon, an opportunity to become informed of the facts of the case and present remonstrances against the granting of the license.

If that was not the intention of the Legislature, then why did it declare in the subsequent clause of the same section that all licenses issued in violation of this section should be void? There are but two clauses in the section, and it can hardly be said that the avoiding clause had reference only to the filing of the petition, for the reason that the county court is a court of record, and can only speak through it, and of course it could not act at all unless the petition had been first filed, any more than the circuit court can render a judgment in a cause without a petition filed, stating the facts constituting the cause of action. Such a judgment of the circuit court, if rendered, would be absolutely null and void, notwithstanding we have no such statute as the one under consideration, declaring such a judgment should be void in such a case. The Constitution would accomplish that effect.

So would it accomplish the same effect on the order of the county court granting the license if the county court, under that statute, should grant the license without the petition having been first filed, although the statute had not contained the annulling clause.

I do not mean to state that the Legislature has not the power to confer upon the *judges* of the county court the authority to issue such a license upon such a petition without it has first been filed; but what I do mean to say is, that the *county court, as a court,* could not act under that statute unless the petition for the license had first been filed therein as prescribed for by that statute; and if it should so act, without its having been filed, then the order granting the license would be void, without enforcing the nullifying clause of the statute.

If that is true, which in my opinion it is, then, as previously stated, it can hardly be said that the annulling clause of the statute has, to say the least, reference only to the filing part of the clause thereof; but upon the other hand, to give to the nullifying clause of the statute any substantial force and effect, it must be construed to mean just what the Legislature said, namely, that the petition should be first filed, and second that it should lay over until the next term before the court could act upon the petition, and if both of those requirements were not complied with, the license should be void.

I am therefore of the opinion that the case of State v. Evans, 83 Mo. 319, and State ex rel. Reider v. Moniteau County Court, 45 Mo. App. 387, should be overruled, and that the writ of *certiorari* should be made permanent.